## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO[1]

| | |
|---|---|
| ROSA CARMINA RODRIGUEZ, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Docket No. 3:14-cv-01193-NT |
| | ) |
| The UNITED STATES OF AMERICA, | ) |
| the UNITED STATES OFFICE OF | ) |
| PERSONNEL MANAGEMENT, and | ) |
| KATHERINE ARCHULETA, Director | ) |
| of the United States Office of | ) |
| Personnel Management, | ) |
| | ) |
| Defendants. | ) |

## ORDER ON MOTION TO DISMISS

Before the Court is the Defendants' motion to dismiss the Plaintiffs' Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (ECF No. 63).[2] For the reasons stated below, the motion is **GRANTED**.

## BACKGROUND

This matter arises out of a disagreement as to the proper calculation of benefits for certain federal employees. The named Plaintiffs (the "**Plaintiffs**") have been federal employees in Puerto Rico, Guam, the U.S. Virgin Islands, and Hawaii. Am. Compl. ¶¶ 2-20 (ECF No. 57). Federal employees working in these and other

---

[1]    I have been designated to hear this case from the United States District Court for the District of Puerto Rico. *See* Designation of District Judge for Service in Another District within this Circuit (ECF No. 18).

[2]    In the alternative, the Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3).

territories or states in the non-contiguous United States receive cost-of-living allowances ("**COLAs**"), pursuant to an Executive Order and various statutes and regulations.[3] Am. Compl. ¶ 1. The Plaintiffs allege that the United States, the United States Office of Personnel Management ("**OPM**"), and OPM Director Katherine Archuleta (together, the "**Defendants**" or the "**Government**"), have unlawfully excluded COLAs from the "retirement base" used to calculate benefits, including the Plaintiffs' retirement annuities, life insurance benefits, and contributions to their thrift savings plans. Am. Compl. ¶ 22. The Plaintiffs seek to represent a class of all federal employees, and surviving spouses of such employees, subject to this COLA exclusion policy. Am. Compl. ¶¶ 37-38.

The Plaintiffs challenge the Government's exclusion of COLAs from their retirement bases through the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, the Administrative Procedure Act, 5 U.S.C. §§ 702, 706, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16. Am Compl. ¶¶ 88-98.

## LEGAL STANDARD

### The Rule 12(b)(6) Standard

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may only grant a Rule 12(b)(6) motion if the complaint fails the limited notice pleading standard imposed by Federal Rule of Civil Procedure 8(a)(2), which "requires only a

---

[3]    These cost of living *allowances* (also known as "non-foreign COLAs") are distinct from the annual adjustments to pay schedules applicable to many federal employees, which are also sometimes referred to as COLAs (cost of living *adjustments*).

plausible short and plain statement of the plaintiff's claim, not an exposition of his legal argument." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (internal citations and quotation marks omitted). Courts must accept all well-plead allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, *González Figueroa v. J.C. Penny P.R., Inc.*, 568 F.3d 313, 316 (1st Cir. 2009), but need not accept " '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . .' " *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 225 (1st Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### The Rule 12(b)(1) Standard

" 'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.' " *Gunn v. Minton*, 133 S. Ct. 1059, 1064 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Federal Rule of Civil Procedure 12(b)(1) provides a vehicle for a party to move to dismiss a complaint where a court lacks subject-matter jurisdiction. Faced with such a challenge, the party asserting federal court jurisdiction has the burden of demonstrating its existence. *United States ex rel. Ondis v. City of Woonsocket*, 587 F.3d 49, 54 (1st Cir. 2009).

### DISCUSSION

The Government argues that the Plaintiffs failed to properly exhaust their administrative remedies and their case therefore fails at the courthouse door. Untangling that assertion requires first a review of the applicable administrative and legal regime and then an examination of the relevant administrative materials.

I.      **The Administrative & Legal Regime**

A.      **The CSRA Review Process**

The Civil Service Reform Act (the "**CSRA**") "specifies the benefits to which federal employees and their survivors are entitled, and provides a reticulated remedial regime for beneficiaries to secure review—including judicial review—of benefits determinations." *Fornaro v. James*, 416 F.3d 63, 66 (D.C. Cir. 2005) (Roberts, J.); *see also United States v. Fausto*, 484 U.S. 439, 455 (1988) (explaining that CSRA provides "a comprehensive system for reviewing personnel action taken against federal employees."). The CSRA includes the Civil Service Retirement Act, which describes the review process for employees who wish to challenge OPM's calculation of their retirement benefits. This review process has three steps. *See Fornaro*, 416 F.3d at 64. First, an employee must file a claim with OPM. *See* 5 U.S.C. § 8347(b). Second, an employee may appeal OPM's decision to the Merit Systems Protection Board (the "**MSPB**"). *See* 5 U.S.C. § 8347(d)(1); 5 C.F.R. § 1201.3(a)(2). Third, and finally, an employee may appeal the MSPB's decision to the United States Court of Appeals for the Federal Circuit. *See* 5 U.S.C. § 7703(b)(1)(A); 28 U.S.C. § 1295(9). This three-step procedure is exclusive and precludes district court review. *See Fornaro*, 416 F.3d at 66; *Matsuo v. United States*, 416 F.Supp.2d 982, 998-99 (D. Haw. 2006); *Cruz v. United States*, No. 1:09-79, 2012 WL 3573659, at \*6 (D.V.I. Aug. 13, 2012).

However, the CSRA provides for different treatment for "mixed cases," which allege not only a benefit miscalculation, but also that the miscalculation "was based on discrimination." *Kloeckner v. Solis*, 133 S. Ct. 596, 601 (2012); *see* 5 U.S.C. § 7702(a)(1); 29 C.F.R. § 1614.302. Briefly stated, an employee with a mixed case may

seek review either by filing a complaint with the agency's Equal Employment Office ("**EEO**") or with the MSPB. *Kloeckner*, 133 S. Ct. at 601. If the agency's EEO office or the MSPB find against the employee, or fail to issue a decision within 120 days, the employee may appeal the decision to a United States district court. *Id.* at 601, 606.[4] Thus, unlike a complaint involving only a benefit determination, appealable ultimately to the federal circuit, a mixed case is appealable to federal district court.

**B.    Title VII**

The Plaintiffs assert that because they have alleged Title VII violations in connection with their benefit claims, they have brought a mixed case and are therefore properly before this Court. Pls.' Opp'n to Defs.' Mot. to Dismiss 25-27 ("**Pls.' Opp'n**") (ECF No. 70). The Defendants counter that the Plaintiffs have failed to bring a "genuine" mixed case and this Court therefore lacks jurisdiction. Defs.' Mem. in Supp. of Mot. to Dismiss 11, 22 (ECF No. 63-1). Resolving this point requires a review of the Title VII provisions at issue and a close look at the administrative record.

**1.    Disparate Treatment and Disparate Impact**

Title VII prohibits employment discrimination on the basis of race, color, religion, sex, and national origin. 42 U.S.C. § 2000e-2(a). It "prohibits both intentional discrimination (known as 'disparate treatment') as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as 'disparate impact')." *Ricci v. DeStefano*, 557 U.S. 557,

---

[4]    Further intricacies of this administrative process (not relevant in this case) are explained in *Kloeckner v. Solis*, 133 S. Ct. 596, 601 (2012).

577 (2009); *see* 42 U.S.C. § 2000e-2(a)(1); 42 U.S.C. § 2000e-2(k)(1)(A)(i). Disparate treatment claims challenge practices in which a person is treated " 'less favorably than others because of' a protected trait." *Ricci*, 557 U.S. at 577 (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 985-86 (1988)). Disparate impact claims "challenge[ ] practices that have a 'disproportionately adverse effect on minorities' and are otherwise unjustified by a legitimate rationale." *Tex. Dep't of Hous. & Cmty. Affairs v. Inclusive Cmtys. Project, Inc.*, 135 S.Ct. 2507, 2513 (2015) (quoting *Ricci*, 557 U.S. at 577). A key difference between these two types of discrimination is that an employee alleging disparate treatment must ultimately prove *intentional* discrimination, whereas an employee alleging disparate impact need not. *Id.*; *Jones v. City of Boston*, 752 F.3d 38, 46 (1st Cir. 2014).

## 2.    Location-Based Safe Harbor

Within Title VII's disparate impact framework, Congress provided a safe harbor for employers who pay employees differently because they work in different locations:

> Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different standards of compensation . . . to employees who work in different locations, provided that such differences are not the result of an intention to discriminate because of race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(h). Courts have interpreted this provision as removing the potential for disparate impact liability for location-based compensation differences. *See, e.g.*, *Candelario Ramos v. Baxter Healthcare Corp. of Puerto Rico, Inc.*, 360 F.3d 53, 61 (1st Cir. 2004). Thus, an employee alleging discrimination with respect to

location-based compensation differences has to proceed through Title VII's disparate treatment framework. *Id.* That employee must, therefore, ultimately prove that the employer acted with an intent to discriminate based on a protected characteristic when that employer decided to compensate employees differently based on location. *Id.* The First Circuit has observed:

> The subsection itself is not surprising. Location is often a proxy for differences in cost and other competitive circumstances; and while Congress could have made those circumstances a separate defense, the difficulties of showing that a difference in pay precisely correlated with a difference in cost would be formidable. In effect, different locations are simply a safe harbor in cases where there is no intentional discrimination.

*Id.* at 62 (internal citation omitted).

### 3.    Administrative Exhaustion

Like their counterparts in the private sector, federal employees must exhaust administrative remedies before filing Title VII claims in federal court. *See* 42 U.S.C. § 2000e-16(c); *Velazquez-Ortiz v. Vilsack*, 657 F.3d 64, 70-71 (1st Cir. 2011). This exhaustion requirement applies to federal employees bringing mixed cases. *See Stoll v. Principi*, 449 F.3d 263, 266-67 (1st Cir. 2006). As the First Circuit has explained, the "exhaustion requirement is no small matter; it 'is a condition to the [United States'] waiver of sovereign immunity' and thus 'must be strictly construed.' " *Vazquez-Rivera v. Figueroa*, 759 F.3d 44, 47-48 (1st Cir. 2014) (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 94 (1990)). The purpose of administrative exhaustion is to provide "prompt notice to the agency and an opportunity for early resolution" of the dispute. *Velazquez-Ortiz*, 657 F.3d at 71.

Not only is proper exhaustion required for *entry* into federal court, but the underlying administrative charge also governs the *scope* of the Title VII case that may follow:

> A Title VII suit may extend as far as, but not beyond, the parameters of the underlying administrative charge. This does not mean that the scope of the suit is inevitably limited to the allegations in the administrative complaint, but it is nonetheless constrained by those allegations in the sense that the judicial complaint must bear some close relation to the allegations presented to the agency.

*Jorge v. Rumsfeld*, 404 F.3d 556, 565 (1st Cir. 2005) (internal citation omitted). The complaint does not have to perfectly mirror the administrative charge. A district court analyzing whether a plaintiff has properly exhausted his claims may "look beyond the four corners of the underlying administrative charge to consider collateral and alternative bases or acts that would have been uncovered in a reasonable investigation." *Thornton v. United Parcel Serv., Inc.*, 587 F.3d 27, 32 (1st Cir. 2009).

For example, in *Fantini v. Salem State Coll.*, 557 F.3d 22, 27-28 (1st Cir. 2009), the First Circuit reversed the dismissal of a sex discrimination claim for failure to exhaust where the underlying charge stated that a male employee had not been disciplined for conduct that earned censure for the female plaintiff. An addendum to the plaintiff's administrative charge included facts about the disciplinary discrepancy, including that " '[a]lthough we were essentially in the same position in terms of job security, there had been major errors and omissions that he was responsible for, he had much more freedom to act to correct them than I had.' " *Id.* at 27 (quoting plaintiff's administrative materials). The plaintiff further asserted that her termination was pretext for gender discrimination. *Id.* Based on these facts in the

8

charge, the First Circuit rejected the district court's finding that the plaintiff had only "made one passing mention of gender discrimination," instead finding that she had "specifically described an alleged incident of disparate treatment involving her and [a] male employee . . . as well as specifically stated that she believed her termination, while she was on sick leave, was a pretext for gender discrimination." *Id.* at 26, 28. She had therefore exhausted her administrative remedies and properly asserted a disparate treatment claim in her complaint. The *Fantini* court did not focus its analysis on whether the employee had included the phrase "disparate treatment" in her charge, but instead drilled down on whether the *facts* in the charge would have alerted the investigating agency to the existence of that claim. *See id.* at 27-28; *accord Williams v. New York City Hous. Auth.*, 458 F.3d 67, 71 (2d Cir. 2006) ("[T]he allegations in Williams' EEOC claim *are* sufficient to have put the EEOC on notice of a potential sex discrimination claim that is 'reasonably related' to her retaliation claim, even though on her EEOC Charge of Discrimination there was no check in the box marked 'Sex.' ").

The *Fantini* decision instructs that courts must focus on the facts employees include in their administrative documents, not the legal terms they use to label those facts. Accordingly, where employees include facts supporting one theory of Title VII liability, and exclude facts that would support another, they may fail to alert the agency to investigate claims under both disparate treatment and disparate impact analysis. *See Pacheco v. Mineta*, 448 F.3d 783, 791-92 (5th Cir. 2006); *Smith v. City of Boston*, No. 12-10291, 2013 WL 3874733, at *4 (D. Mass. July 24, 2013); *De Los*

9

*Santos v. Panda Express, Inc.*, No. C10-01370, 2010 WL 4971761, at *5 (N.D. Cal. Dec. 3, 2010). *But see Gomes v. Avco Corp.*, 964 F.2d 1330, 1334-35 (2d Cir. 1992) (charge "most naturally" describing disparate treatment also exhausted disparate impact claims where agency investigation of the utility of a neutral employment practice "would reasonably have flowed from an investigation of [the] disparate treatment claim"). In such cases, employees fail to exhaust administrative remedies for the non-factually supported theory of liability. *See Pacheco*, 448 F.3d at 792; *Smith*, 2013 WL 3874733, at *4; *De Los Santos*, 2010 WL 4971761, at *5.

## II.    Application of the Law to the Plaintiffs' Allegations

The Defendants argue that the Plaintiffs have failed to exhaust their Title VII disparate treatment claims and that their Title VII disparate impact claims are barred by 42 U.S.C. § 2000e-2(h)'s location-based safe harbor. The Plaintiffs counter that the location-based safe harbor does not apply, and that even if it does, their administrative charges included enough material regarding disparate treatment to satisfy the exhaustion requirement.

### A.    Title VII's Location-Based Safe Harbor Applies

The Plaintiffs maintain that 42 U.S.C. § 2000e-2(h)'s location-based safe harbor does not apply to the United States. Pls.' Suppl. Br. 1 (ECF No. 91). They note that this section refers to "an employer," but the term "employer" in Title VII does not include the United States. Pls.' Suppl. Br. 2 (citing 42 U.S.C. §§ 2000e-2(h); 2000e(b)).

There are two problems with this argument. First, it is contrary to First Circuit precedent. *See Abril-Rivera v. Johnson*, No. 14-1316, 2015 WL 4578404, at *6 (1st

Cir. July 30, 2015) (applying 42 U.S.C. § 2000e-2(h) in a suit against the Department of Homeland Security, its Secretary, and the Federal Emergency Management Agency); *Cartagena v. Sec'y of the Navy*, 618 F.2d 130, 134-35 (1st Cir. 1980) (adopting district court's application of 42 U.S.C. § 2000e-2(h) in a suit against the Secretary of the Navy).[5] Second, § 2000e-2(h) does not operate simply as a defense to disparate impact claims, rather it operates to define the concept of disparate impact itself. *See Franks v. Bowman Transp. Co., Inc.*, 424 U.S. 747, 758 (1976) ("On its face, § 703(h) appears to be only a definitional provision; as with the other provisions of § 703, subsection (h) delineates which employment practices are illegal and thereby prohibited and which are not."). Section 2000e-2(h) thus clarifies that paying employees differently when they work in different locations is not a practice susceptible to disparate impact liability. Accordingly, whether the defendant is a private employer or the United States, § 2000e-2(h) applies.

The Plaintiffs also assert that the Government's treatment of COLA-area employees is not the type of "location" difference that § 2000e-2(h)'s safe harbor protects. Pls.' Opp'n 19-20 (citing *Russell v. American Tobacco Co.*, 528 F.2d 357 (4th Cir. 1975)). In *Russell*, the Fourth Circuit declined to apply the location-based safe harbor to tobacco plants located two miles apart, staffed with unskilled employees recruited from the same geographic area. 528 F.2d at 362. *Russell* is completely distinct from this case, where federal employees are paid differently based on whether

---

[5]      Other circuit courts have similarly endorsed 42 U.S.C. § 2000e-2(h)'s application to the United States as an employer. *See Harrell v. Donahue*, 638 F.3d 975, 981 (8th Cir. 2011); *Cosme v. Henderson*, 287 F.3d 152, 160 (2d Cir. 2002).

they work in the contiguous United States versus in Puerto Rico, the United States Virgin Islands, Guam, the Northern Mariana Islands, Hawaii, or Alaska. *See* Compl. ¶¶ 1, 23.[6] The location-based safe harbor applies. The Plaintiffs are only properly before this Court if they exhausted claims of disparate treatment.

## B.   The Plaintiffs did not Administratively Exhaust Disparate Treatment Claims

In order to determine whether the Plaintiffs administratively exhausted their claims of disparate treatment, I examine their: (1) OPM Applications (ECF Nos. 63-2, 63-6, 63-7); (2) EEO Charges (ECF Nos. 63-3, 86-1); (3) EEO Charge Addenda (ECF Nos. 63-4, 86-3); and (4) EEO Class Complaint Memorandum (ECF No. 63-5).[7] The question is whether a reasonable investigation of the claims asserted in these documents would have led to an inquiry into whether OPM engaged in prohibited disparate treatment against the Plaintiffs. *See Thornton*, 587 F.3d at 31.

---

[6]      In addition, the Plaintiffs maintain that the location-based safe harbor does not insulate disparate impact resulting from past intentional discrimination. Pls.' Opp'n 19 (citing *Russell v. Am. Tobacco Co.*, 528 F.2d 357, 363 (4th Cir. 1975); *Ass'n Against Discrimination in Emp't, Inc. v. Bridgeport*, 647 F.2d 256, 273 (2d Cir. 1981)). But, as discussed below, the Plaintiffs did not raise facts describing past intentional discrimination in their administrative materials, and thus did not properly exhaust such claims.

[7]      I will not consider the "Statement in Support of Class Certification" (ECF No. 70-1 at 2-7), which the Plaintiffs submitted to the EEOC. In the private employment context, a plaintiff must exhaust claims with the EEOC and obtain a right-to-sue letter before filing a Title VII case in federal court. *See* 42 U.S.C. § 2000e-5(f)(1). But in mixed cases, federal employees bypass the EEOC, and instead may file their discrimination claims with the EEO office of the allegedly discriminating agency. *See* 29 C.F.R. § 1614.302(b). The EEOC was involved in this case only because class complaints must be forwarded to that agency. *See* 29 C.F.R. 1614.204(d)(1). Here, the EEO office of OPM, not the EEOC, was the Plaintiffs' chosen channel for administrative exhaustion and was the agency responsible for investigating their claims. Thus, the cases the Plaintiffs cite involving suits against private or local government employers, where the EEOC acted as investigator and courts considered later-filed submissions to the EEOC in their exhaustion analysis, are unconvincing as to why later-filed EEOC documents should be considered in this case. *See* Pls.' Opp'n 12 & n.6 (citing *Benbow v. State Univ. of New York-New Paltz*, No. 1:11-cv-0870, 2014 WL 1871863, at *4 (N.D.N.Y. May 8, 2014); *Zito v. Fried, Frank, Harris, Shriver & Jacobson, LLP*, 869 F.Supp.2d 378, 391 (S.D.N.Y. 2012); *Huda v. Lockheed Martin*, No. 07-9090, 2008 WL 191300, at *3 & n.4 (E.D. La. Jan. 22, 2008)).

The Plaintiffs' administrative materials only exhaust disparate impact claims against OPM. The EEO Charges point to an otherwise neutral pay practice—OPM's "failure to include COLA in the retirement base"—and allege that that practice "discriminates against the large numbers of racial and ethnic minorities employed in non-foreign areas." EEO Charge 2 (ECF No. 63-3).[8] The EEO Charge Addenda each devote a section to the "disparate impact on racial and ethnic minorities" caused by OPM's exclusion of COLA payments from the retirement base, but include no parallel section devoted to disparate treatment. EEO Charge Addendum 7-8 (ECF No. 63-4).[9]

The Plaintiffs further develop facts supporting their disparate impact theory of liability in their EEO Class Complaint Memorandum. There they explain that "[a] large percentage of class members are members of minority groups," and further, that "[d]ecisions with a disparate adverse impact on protected minorities are prohibited, even if the decision is made for a valid reason." EEO Class Complaint Memorandum 57. The Plaintiffs go on to describe the elements of a Title VII disparate impact claim, and explain that "statistical evidence of systemic discrimination," is required under this theory of liability, but a showing of "intent or motive to discriminate" is not. Mem. in Supp. EEO Compl. 57 (internal citations omitted). With respect to retirement annuities, the Plaintiffs allege that the challenged OPM practice discriminates against protected minorities because

---

[8]     The named Plaintiffs' EEO Charges are substantively identical. For convenience, I cite only to Rosa Rodriguez's EEO Charge.

[9]     The EEO Charge Addendum filed on behalf of Rosa Rodriguez is substantively identical to the Addendum filed on behalf of the other named Plaintiffs. For convenience, I cite only to Rosa Rodriguez's EEO Charge.

> A very large portion of the federal employees who are affected by this practice are black, Hispanic, native Alaskan, native Hawaiian, native Guamanian (Chamorro), or Asian (depending on the specific area). While there may be no discernable intent to discriminate against these minorities, the effect of exclusion statistically falls on racial minorities without any justifiable reason.

EEO Class Complaint Memorandum 58. As with the EEO Charge Addenda, this Memorandum includes no discussion of facts evidencing disparate treatment or intentional discrimination.

The Plaintiffs nonetheless assert that their administrative materials should be read to allege impermissible discrimination generally, not disparate impact alone. Pls.' Opp'n 12. But the facts alleged in these materials—that an otherwise neutral policy disproportionally affected protected groups—clearly describe only a disparate impact theory of liability.[10] Nowhere in these materials do the Plaintiffs allege that the Government acted with discriminatory intent in deciding not to include COLA in the retirement base. As discussed above, the intent to discriminate because of a protected characteristic is the touchstone of a disparate treatment claim. A reasonable investigator, faced with a charge that a neutral policy is having a disproportionately adverse effect on protected minorities, which nowhere alleges facts

---

[10]     The Plaintiffs' administrative materials contemplate that the decision to exclude COLA from the retirement base may have been within OPM's discretion. *See* EEO Class Complaint Memorandum 9 ("[T]o the extent that the practice involves agency discretion . . . ."). The Plaintiffs assert that they alleged that OPM's exercise of discretion led to discrimination, and that they therefore necessarily asserted a claim of disparate treatment. Pls.' Opp'n 13 (citing *Watson*, 487 U.S. at 988-89). In *Watson*, the Supreme Court held "that subjective or discretionary employment practices may be analyzed under the disparate impact approach in appropriate cases." 487 U.S. at 991. *Watson* does not, as the Plaintiffs suggest, stand for the proposition that mentioning discretionary decision-making necessarily exhausts claims of disparate treatment.

evidencing an intent to discriminate,[11] would not reasonably proceed to investigate disparate treatment.

The closest the Plaintiffs come to raising a disparate treatment allegation in their administrative materials is the following: "[T]he rules and practices of the agency with respect to pay rates of all kinds discriminate against employees in non-foreign areas and have a disparate adverse impact on racial and ethnic minorities . . . ." EEO Class Complaint Memorandum 9. This statement contemplates that the Plaintiffs have suffered a type of discrimination distinct from disparate impact. However, the use of the word "discriminate" generally would not cause a reasonable investigator to look into disparate treatment where the administrative materials are devoted to facts supporting disparate impact allegations and explicitly state that the Plaintiffs will not have to show any discriminatory intent—an assertion that only makes sense if they were not advancing a disparate treatment theory of liability. *See* EEO Class Complaint Memorandum 57, 58. Further, the above-quoted assertion simply states a conclusion, it does not state any *facts* that would alert the EEO officer to investigate disparate treatment. *See Fantini*, 557 F.3d at 27-28.

The Plaintiffs have not administratively exhausted their Title VII disparate treatment claims. If they wish to bring such claims in federal court, they must first

---

[11]   In their Amended Complaint and opposition to the present motion, the Plaintiffs point to instances of discrimination in United States history as demonstrating the Government's intent to discriminate against members of the proposed class. *See* Am. Compl. ¶¶ 71-74; Pls.' Opp'n 16-18; Exs. 2-11 to Pls.' Opp'n (ECF Nos. 70-2-70-11). These materials highlight the absence of any facts evidencing intentional discrimination in the Plaintiffs' administrative materials. They also show that the Plaintiffs know how to allege facts evidencing intentional discrimination, they simply failed to do so at the administrative level.

exhaust them through the appropriate administrative channels. Without this step, I cannot adjudicate their disparate treatment claims. *See Velazquez-Ortiz*, 657 F.3d at 70-71; *Cruz*, 2012 WL 3573659, at \*6.

### C.    Jurisdiction Over Remaining Nondiscrimination Claims

Because the Plaintiffs failed to exhaust their disparate treatment claims and because the location-based safe harbor applies to the Plaintiffs' disparate impact claims, all that remains are their claims regarding retirement benefits. The Plaintiffs press these claims through the Administrative Procedure Act and the Declaratory Judgment Act. Am. Compl. ¶¶ 88-94.

The Plaintiffs' Administrative Procedure Act challenges to their individual benefit calculations are precluded by the CSRA. *See Fornaro*, 416 F.3d at 64; *see also Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 2140 (2012) (affirming dismissal for lack of jurisdiction over "a challenge to CSRA-covered employment action brought by CSRA-covered employees requesting relief that the CSRA routinely affords."). And even assuming the Plaintiffs' facial and procedural Administrative Procedure Act challenges survive CSRA preclusion, such claims are nonetheless time-barred. A procedural or facial challenge to an agency regulation under the Administrative Procedure Act must be initiated within six years of the regulation's publication in the Federal Register. *See* 28 U.S.C. § 2401(a); *Dunn-McCampbell Royalty Interest, Inc. v. Nat'l Park Serv.*, 112 F.3d 1283, 1287 (5th Cir. 1997); *Wind River Mining Corp. v. United States*, 946 F.2d 710, 715 (9th Cir. 1991). Here, the challenged regulations were published in 1948 and 2002. Compl. ¶¶ 57, 61. Any procedural or facial challenge to the regulations themselves are thus time-barred. Nor does the

16

Declaratory Judgment Act provide the Plaintiffs with a substantive cause of action where none otherwise exists. *See Akins v. Penobscot Nation*, 130 F.3d 482, 490 n.9 (1st Cir. 1997).[12]

## CONCLUSION

For the reasons stated above, I **GRANT** the Defendants' motion to dismiss.

SO ORDERED.

/s/ Nancy Torresen
United States Chief District Judge

Dated this 20th day of August, 2015.

---

[12] The Plaintiffs point to a line of cases suggesting that I continue to retain jurisdiction over their remaining nondiscrimination claims. Pls.' Opp'n 27 (citing *Seay v. Tenn. Valley Auth.*, 339 F.3d 454 (6th Cir. 2003)); Pls.' Opp'n 31 (citing *Bonds v. Leavitt*, 629 F.3d 369, 379 (4th Cir. 2011); *Ikossi v. Dept. of Navy*, 516 F.3d 1037, 1042-45 (D.C. Cir. 2008); *Seay*, 339 F.3d at 472; *Doyal v. Marsh*, 777 F.2d 1526, 1536 (11th Cir. 1985)). However, unlike the case at bar, those cases did not involve the intersection of claims under the Administrative Procedure Act/Declaratory Judgment Act and the CSRA. Instead, I find that the reasoning of *Fornaro v. James*, 416 F.3d 63, 66-67 (D.C. Cir. 2005) (Roberts, J.) should govern, and thus, that the CSRA precludes review of retirement benefit determinations under the Administrative Procedure Act and Declaratory Judgment Act.